Johnson, C. J. The first objection urged against the decision of the circuit court is, that the appellee was permitted to introduce the bond and assignments in evidence. It is insisted that it is shown by the ti’anseript of the justice that the bond was filed in his office anterior to the transfer by Chapman to Walker, and that consequently this suit was instituted before any right of action accrued to the appellee. This raises the point as to what it is that constitutes the institution of the suit. The 13th section of chapter 87 of the Revised Code enacts that “ suits may be instituted before a justice either by the voluntary appearance and agreement of the parties or by process.” The 19th section of the same act also provides that “ Whenever any suit shall be founded on any instrument of writing, pui’porting to have been executed by the defendant, such instrument shall be filed with the justice before any process shall be issued in the suit.” It has been repeatedly ruled by this court that the filing of the cause of action is essential to the jurisdiction of the justice; but we cannot conceive how it could be seriously contended that the mere act of filing should he regarded as the institution of the suit. It was clearly the process in this case by which the suit was commenced, and consequently the simple act of filing the instrument upon which it was based, though it may have occurred before the transfer to the appellee, could not by possibility have had the effect to destroy the negotiability of that instrument, or to prevent the appellee from instituting and prosecuting the suit in his own name. It will be conceded that the writing was filed with the justice on the 28th of July 1845, but the transfer from Chapman to the appellee bearing date the 19th of August and the process not having issued until the 22d of the same month, it follows necessarily that the legal interest in the cause of action passed out of Chapman and vested in the appellee before the institution of the suit. Under this view of the case we think that the suit was properly commenced in the name of Walker, and that consequently upon that ground the admissibility of the bond and assignments could not be legitimately questioned. The circuit court therefore committed no error in thus permitting them to go to the jury. The next ground of objection is that the appellants are sought to be held liable as endorsers, when it does not appear they have been duly notified of the non-payment or protest of the instrument thus endorsed. The 9th section of chapter 11 of the Revised Code provides that “ All endorsers or assignors of any instrument in writing assignable by law, for the payment of money alone, on receiving due notice of the non-payment or protest of any such endorsed or assigned instrument in writing, shall be equally liable with the original maker, obligor or payor of such instrument, and may be sued for the same at the same time with the maker, obligor or payer thereof, or may be sued separately.” In order to determine and fix the liability of an endorser or assignor under this act, it is obvious that the plaintiff must show that he has given him due notice of the non-payment or protest of the instrument thus endorsed or assigned. The record presents no question as to the sufficiency of the demand or notice of non-payment or protest of the instrument sued upon. The appellee did not attempt upon the trial to prove a protest, nor did he pretend that any demand had ever been made of the makers of the bond. The witness testified that two or three days before the commencement of the suit, he for and in behalf of the appellee gave the appellants written notice that the bond sued upon remained wholly unpaid and that if they did not pay it, suit would be brought against them upon the bond and their endorsement. He further stated that he never did make a demand of payment of the bond of the payors, as at the time he gave the notice they were non-residents, and that he did not know whether or not any demand had ever been made. Upon this state of facts the appellants moved to exclude the bond and assignments from the j ury, but the court overruled the motion and permitted them tp be read. It is manifest that the court erred in overruling the ipotion to exclude as no foundation whatever had been laid for their introduction. It did not appear that payment had been demanded pf the makers and due notice given of the non-payment, nor did the appellee show any legal excuse for his failure to make such demand, por did it appear in evidence that the bond hfid been protested for non-payment. The testimony on the part of the appellants shows that the bond sued upon was, some time in June A. D. 1843, assigned in blank by them to Daniel J. Chapman, before it became drue, and that at the time the assignment was made and from that timp unfil some time after the bond became due, Baird and Ramsey, the makers of the bond, and William L. McGuire one of the appellants and the said Daniel J. Chapman, resided in the town of Bates-ville, and that John Ruddell the other appellant resided within two miles of said town of Batesville; and that from the time of the assignment by the appellants until after the bond- became due and payable they and each of them lived within five miles of each other and that the appellee lived within two miles of all the parties. This Completes th.e substance of all the testimony offered upon the trial in the court below. The appellee then moved the court to instruct the jury that when the appellants were notified of the non-payment iff the bond sued upon their liability to pay the same became fixed, ¡and that he had a right to maintain his action therein as assignee, ’J’he appellants objected to this instruction, but the court overrulec} the objection and instructed accordingly. The propriety of this instruction will depend entirely upon whether the appellants were duly notified of the non-payment by the makers. True it is that they were notified that the amount had not been paid near twenty months after the maturity of the bond, and some two or three days before the institution of the suit, but there is not one scintilla of evidence tending to show that payment had ever been demanded, or that due diligence had been used to make such demand. It is \ not sufficient to fix the liability of the endorser that he has simply been notified that the money has not been paid, but he is entitled to know that payment has actually been demanded of the maker or that due diligence has been used to make such demand and that within such time after maturity as the law prescribes. The appellee' having wholly failed to prove such demand and notice as were necessary to fix the liability of the appellants, the court necessarily erred in giving the instructions asked by the appellee. The appellants also asked sundry instructions all of which were refused. They asked the court to instruct the jury; first, that a discharge given to Chapman by Walker, who is his assignee, operates in law as a discharge to McGuire and Ruddle. The court decided correctly in overruling this instruction, as the appellee, though he had no recourse upon Chapman, could still have recovered against the appellants had Chapman have taken the requisite steps to retain his remedy. The first endorsers not only engage to pay their immediate endorsees, but also any subsequent endorsee, provided the necessary steps should be taken by either and in due time, to fix their liability. The second instruction asked was, that before the plaintiff could recover against Ruddell and McGuire as the assignors of Chapman, who was the assignor of Walker, he must prove an actual demand upon the original payors. This was correctly refused because it is permissible to show not only an actual demand, but that the holder has used due diligence to make demand, and that he has not been able to do so. The third is, that if the bond was assigned by Ruddell and McGuire before it became due, the holder was bound to prosecute the claim against the original makers with due diligence; otherwise he could not hold Ruddell and McGuire liable. This instruction certainly was not well founded in law, as the holder was under no legal obligation to prosecute the claim against the makers at any time, as he was authorized to sue them and the endorsers jointly or severally. The fourth and fifth being the same in substance as the third were also properly overruled. The sixth instruction asked is, that the holder of the bond when it became due, was bound to make demand of the makers within a reasonable time, and that within a reasonable time to give notice of its non-payment to the assignors whom he seeks to hold liable. Bills, notes and checks when payable at a time certain, must be presented on the very day they fall due and those which are not payable on a day certain, but on presentment or demand, must be presented or at least put in circulation for that purpose within a reasonable time after they have been received, depending on distance and other circumstances, By analogy the rule would be the same in regard to the time of demanding payment of a writing under seal, in order to fix the liability of the endorser. This instruction was therefore properly refused. The time Of giving notice is settled with as much certainty as that of demanding payment, and therefore the seventh and last instruction was also correctly overruled. Upon a full and critical examination of the whole case we think it clear that the judgment of the circuit court is erroneous, and that therefore a new trial ought to have been aüvarded. Judgment reversed.